PIERCE, Justice,
Concurring in Result Only:
¶ 24. I respectfully concur in result only with the majority opinion today. I write separately to express my view that, but for this Court’s prior precedent in Williamson v. Edmonds, 880 So.2d 310 (Miss.2004), I would have affirmed the trial court’s ruling to grant summary judgment, in part, on the attorney’s fees, multi-litigation district (MLD) fees, and Mississippi Trial Lawyers Association (MTLA) contributions, and deny summary judgment, in part, on the case specific and generic expenses.
¶ 25. The basis of this case is a dispute over the allocation of proceeds from a settlement to a former client, Waggoner, from his attorney, Williamson. While Waggoner disagrees with the manner in which the funds were allocated, he believes that the gross amount of his settlement was fair. In other words, Waggoner is satisfied with the total amount of his settlement. However, Waggoner claims that he is entitled to a larger portion of the proceeds from the aggregate settlement and Williamson, consequently, was over paid for his services. In addition, Waggoner disagrees with the allocation of a portion of the gross settlement amount for various fees, contri- *158 buttons, and expenses that were deducted from the gross settlement amount.
¶ 26. In my opinion, this is a contract dispute as to certain disbursements. While Waggoner artfully couches his suit in terms of a breach of fiduciary duty, breach of contract, and negligent misrepresentation -with underlying allegations that Williamson failed to comply with various Rules of Professional Conduct, the record reveals that Waggoner agreed to deductions for certain fees and contributions. That being said, the trial court granted summary judgment in part as to all causes of action for the attorneys fees, MDL fees, and MTLA contribution. The trial court left all claims intact as they related to the case specific expenses and the generic expenses.
¶ 27. The record reveals that the Wag-goners signed numerous documents throughout their representation. Barthel Waggoner signed a Representation Agreement which stated, in part:
2. COMPENSATION: In the event of any recovery had by, settlement obtained for, or payment made to the clients in connection with the above referred to claim or right of action, EDWARD A. WILLIAMSON, shall be entitled to and shall be paid a percentage of the gross proceeds in accord with the following schedule:
c. In the event settlement is obtained after suit is filed, and after time permitted for discovery, final pretrial hearing or the commencement of trial preparation, whichever is earlier
.45%
¶ 28. Barthel and Jacqueline Waggoner both signed a form itemizing the expenses that would be deducted from their gross settlement amount on May 5, 2001. This form provided that “1/we realize that the following categories of expenses will be deducted from my/our net proceeds.” The first item on the list was for a six percent deduction for MDL fees. The form stated, in part:
Three percent of the gross recovery for expenses ordered to be deducted from each settlement by the multi-district litigation authority and an additional three percent is to be deducted from attorneys’ fees, making a total of six percent.
Therefore, the settlement provided for six percent of the Waggoners’ gross settlement amount to be deducted for the multi-district litigation fees of which three percent of the fees would be deducted from each settlement and three percent would be deducted from attorney’s fees.
¶ 29. In addition, this form provided authorization check-boxes for contributions to the Mississippi Trial Lawyers’ Association. The form stated, in part:
Authorization for contribution to the Mississippi Trial Lawyers’ Association. I/We recognizing the dedicated efforts of the Mississippi Trial Lawyers Association in preserving access to justice for injured individuals, I/We authorize a contribution to the Mississippi Trial Lawyers Association in order to allow full access to justice for those wrongfully injured in the state of Mississippi.
A contribution in the amount of two percent of my recovery is to be made directly to the Mississippi Trial Lawyers Association, Political Fund.
□ I authorize
□ I do not authorize
The purpose of this contribution is the (sic) preserve our system of justice for others through political activities and educational efforts of the Mississippi Trial Lawyers Association.
The Waggoners checked the “I authorize” box to contribute two percent of their re *159 covery to the MTLA. Barthel and Jacqueline Waggoner also signed a confidential release, indemnity, and assignment form on May 5, 2001.
¶ 30. On June 25, 2001, Barthel and Jacqueline Waggoner signed a qualified settlement fund settlement agreement and general release which specified the amount of net proceeds that would be received by them. On June 25, 2001, the Waggoners also signed a disbursement statement which itemized the gross settlement amount, deductions, and net proceeds to them. Included in the itemized disbursement were deductions taken for forty-five percent in attorney’s fees, three percent for MDL fees, and MTLA contributions. The disbursement statement provided:

DISBURSEMENT STATEMENT

CLIENT NAME: Barthel Waggoner
ATTORNEY(S): Edward Williamson
SETTLEMENT AMOUNT: $3,008,961.75
Attorney’s fee (45%) $ 1,354,032.79
MDL fee (3%) (See-Item lof the Expense Agreement): $ 90,268.85[12]
MTLA contribution: $ 30,042.87
EXPENSES:
MILLER & ASSOCIATES (case spscific) $ -0-
THE WILLIAMSON LAW FIRM (case specific) $ 15,041.64[13]
GENERIC EXPENSES: $ 47,475.10
TOTAL EXPENSES: $ 62,516.74
NET TO CLIENT: $1,472,100.50
I, the undersigned agree to accept the above settlement regarding my case against American Home Products, et al. and my attorneys have informed me of ifiy rights and options regarding this matter. The settlement of the above case was made with my consent and approval. I have read the above statement of cost and distribution of settlement and I agree to the terms of this disbursement. I acknowledge receiving a copy of this statement. I understand that I am personally responsible for the payment of medical bills incurred by me in connection with this claim, including but not limited to liens or subrogation claims from any insurance company or governmental agency. I further agree to hold the offices of Miller & Associates, The Williamson Law Firm, Black-mon & Blackmon and any other attorney associated with my case harmless from any medical, hospital, nurses or other liens or claims which may exist now or in the future in connection with this matter.
¶ 31. Further, in his deposition testimony, Barthel acknowledged that the settlement was fair:
Q. My question is whether or not — but and excuse me, and it’s not a question here today with regard to whether or not you think the gross amount of money is fair, because you’ve testified that you think the $3,000,000.00 as the gross amount is fair, is that right?
A. Yeah.
¶ 32. Barthel signed the disbursement statement even though he thought the expenses were excessive. When asked why he signed the disbursement statement under these circumstances, Barthel stated “I wanted the money. That’s the only way I would get [it] is to sign it.” (Emphasis added). In his deposition, Barthel also stated that he thought that the attorney’s fees were excessive. Nevertheless, Bar-thel first stated that twenty-five percent fees were reasonable and later added that thirty-five percent attorney’s fees were reasonable.
¶ 33. The record is clear that the Wag-goners agreed to have the attorney’s fees, *160 MDL fees, and MTLA fees deducted from the gross settlement amount. In Russell v. Performance Toyota, Inc., 826 So.2d 719, 726 (Miss.2002), this Court found that “In Mississippi, a person is charged with knowing the contents of any document that he executes.” Id. (citing J.R. Watkins Co. v. Runnels, 252 Miss. 87, 96, 172 So.2d 567, 571 (1965)). The Waggoners signed documents authorizing the deduction of these fees and contributions from their gross settlement amount.
¶ 34. Notwithstanding this evidence, this Court in Edmonds, a similar case concerning disclosure of an aggregate settlement, stated what constituted disclosure for an aggregate settlement pursuant to Rule 1.8(g).
¶35. Mississippi Rule of Professional Conduct 1.8(g) provides:
A lawyer who represents two or more clients shall not participate in making an aggregate settlement of the claims of or against the clients, or in a criminal case an aggregated agreement as to guilty or nolo contendere pleas, unless each client consents after consultation, including disclosure of the existence and nature of all the claims or pleas involved and of the participation of each person in the settlement.
¶ 86. In Edmonds, this Court stated:
Under Mississippi Rule of Professional Conduct 1.8(g), Williamson obtained a lump sum aggregate settlement for all of his clients during settlement negotiations. In determining whether the proceeds of the aggregate settlement were improperly or fraudulently distributed among the various plaintiffs in the American Home suit, the information requested by the Edmondses is highly relevant to their claims of breach of contract and breach of the duties of care and loyalty. The client is entitled to know the amount of the settlement, and the basis for the calculations, distributions and accounting of the proceeds of the settlement with American Home.
Edmonds, 880 So.2d at 320 (emphasis added). This Court further interpreted this disclosure to mean that “[f]or each person, the defendant shall provide: (1) the medical diagnosis, (2) additional information, if any, which affected the amount of settlement, and (3) the amount of settlement.” Id. at 321.
¶ 37. The Waggoners clearly agreed to all the deductions from the disbursement statement via written documentation and deposition testimony to that effect. Notwithstanding this evidence and based on the precedent set by Edmonds, there is a factual dispute as to whether all required information was disclosed to the Waggon-ers at the time of the settlement. Thus, the Waggoners now will have an opportunity to prove to a jury that they should have received more money from the aggregate settlement. Thereafter, appropriate deductions and fees as agreed to by the Waggoners should be assessed therefrom pursuant to the documents they knowingly signed. Therefore, the granting of summary judgment was not proper in this case.
¶ 38. For the foregoing reasons, I concur in result only.
CHANDLER, J., JOINS THIS OPINION. WALLER, C.J., JOINS THIS OPINION IN PART.

. The Waggoners received a $30,000 refund because the MDL judge determined that the fund had an excess amount of funds.

. The Waggoners received an almost $5,000 refund on these expenses,